## Case No. 4,273.

### The E. C. SCRANTON.

[3 Blatchf. 50;[1] 11 N. Y. Leg. Obs. 353.]

Circuit Court, S. D. New York.  Sept. 29, 1853.

William C. Prime, for libellants.

William J. Haskett and Washington Q. Morton, for claimant.

NELSON, Circuit Justice. This libel was filed in the court below by the owners of the ferry-boat Oneota, against the schooner E. C. Scranton, in a case of collision, which occurred on the East river, on the 1st of October, 1850. The Oneota had left her berth at Peck slip, and was on her course up the river, close in along the New York shore, on her way to Williamsburgh, Long Island, the ferry being between those two termini. The schooner was beating down the river, and was on her larboard tack, having started upon it from the Brooklyn side, a little below the navy yard. She was close hauled, the wind being about southwest by south, which gave her a direction towards the foot of Clinton street, on the New York side. This point, judging from the eye on the map, is about

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

midway between Peck slip and the terminus of the ferry at Williamsburgh. The Oneota kept her course up the river, about one hundred yards or more from the docks, and encountered the schooner before that vessel had run out her tack. The court below held the schooner to have been in fault, and decreed in favor of the libellants.

It is contended, on the part of the libellants, that the schooner should have tacked about before she reached the track of the Oneota, and not have persevered in her course, as the latter was in the slack water on the New York shore, which it was the duty of the former not to enter before making her tack about. It is also urged, that the city ordinance, which forbids vessels anchoring in the river within a certain distance of ferry-slips, implies that the Oneota had a right to pursue the track she was in without regard to vessels in the situation of this schooner. I cannot agree to either of these positions.

In the first place, the schooner had a right to run out her course as near to the New York side as was practicable, leaving at the time sufficient room to enable her to tack about without danger of getting on shore; and the ferry-boat was bound to know that this was not only her right but her duty and to take the proper steps to pass her in safety. She had no right to make the track she was in the limit of the channel, and require the schooner to tack about when within a proper distance of that line, and thus shorten her course as she was beating down the river. In the next place, the city ordinance does not purport to regulate the navigation of the river; and, if it did, it would, so far as respects any such regulation, be a nullity, the municipal authorities of the city possessing no such power. Consequently, neither of the exceptions attempted to be set up in this case, in order to dispense with the observance of the admitted general nautical rule, has any foundation.

I have, heretofore, had occasion to observe, in these collision cases, that a large portion of them occur in consequence of a departure, by one of the vessels, from the established general rule of navigation; and, as a matter of course, such departure is sought to be vindicated by setting it up as an exception to the rule. It was but the other day I decided a case in which a collision had occurred on this river, a short distance above the place of the present one, in consequence of a supposed usage that the ascending steamer was entitled to the New York side, and to the benefit of the slack water there, and that the descending boat was required to keep out in the middle of the river. Laboring under this misapprehension, as the two boats approached nearly on a line, the master of the ascending boat, instead of porting his helm and taking the right, according to the established rule, starboarded it, and the collision was the consequence. The Niagara [Case No. 10,-220]. Before a master can venture, with any

prudence, upon an exception to the general rule of navigation, he should be first well satisfied that it has foundation in law; and it will be safe for him always to act upon the assumption, that any exception that the courts can properly recognize and approve, will be one so universally known and acquiesced in by persons engaged in the navigation, that it cannot at any time be a matter of serious dispute. No master can make an exception for himself. The law alone can make it, or a usage so universal, and of such long continuance, as to have become a law of the seas. Courts of admiralty lean against these exceptions; and it would be well for those engaged in navigation to remember this principle. Such exceptions embarrass the navigation of vessels, unless they are as clear and well defined as the general rule itself, and lead to most of the marine disasters that occur.

The case in hand is one among the many instances that have been before this court. If the master of the ferry-boat had not been misled by the supposed exception to the general rule, he would have found no difficulty in clearing the schooner. The river is between one-half and three-quarters of a mile wide where the collision occurred, and was open to him. As the schooner was on her larboard tack, and in a line crossing his track as she approached the New York shore, and, as he should have seen in time that there would be danger if the Oneota kept her course, he should have ported his helm, and passed the schooner's stern, instead of attempting to pass her bow. This would have avoided all danger.

There is another difficulty the ferry-boat has to encounter. in this case. By the law of New York, passed April 12th, 1848, entitled, "An act in relation to the navigation of the East river by steamboats," vessels navigating this part of the East river, up or down, are required to keep in the middle of it. This boat in her trips runs back and forth lengthwise of the river, from Peck slip to Williamsburgh, a distance of more than a mile. I have had occasion to apply this rule of navigation, during this term, in the case of the steamboat Worcester. The Bay State [Id. 1,149]. The boats of this ferry fall within this law, and are bound to conform to it. It is quite as applicable to them, for the distance they run, as to any other vessel navigating these waters.

I am satisfied, therefore, that the decree below was erroneous and must be reversed.